IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARRIE LOUGHMAN, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br>　v.<br><br>CAREER EDUCATION CORPORATION,<br><br>　　　　Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiff, Carrie Loughman, individually and on behalf of all other persons similarly situated, alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

### NATURE OF ACTION

1.　Defendant Career Education Corporation ("CEC") has violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. §64.1200 ("hereinafter referred to as the "TCPA").

2.　CEC has been sued for violating the TCPA at least twice in the last six years. *See Brunk v. Career Educ. Corp.*, No. 15-11863 (N.D. Ill.); *Fitzhenry v. Career Educ. Corp*, No. 14-10172 (N.D. Ill.). Despite litigation putting CEC on notice that its calling practices violated the TCPA, CEC has not taken steps to comply with the law.

3.　CEC has violated the TCPA in two ways. *First*, CEC placed telemarketing calls to Plaintiff and others similarly situated on their cellular telephones with the use of an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), without prior express consent.

4.　*Second*, CEC failed to implement mandatory minimum procedures required by the TCPA for making telemarketing calls, including the most basic requirement of maintaining a

list of persons who request not to receive such calls and not calling such persons who make do-not-call requests.

5. Plaintiff brings this action for injunctive relief and statutory damages resulting from CEC's conduct in violation of the TCPA and Rules.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under the TCPA, a federal statute

7. Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. §§ 1391(b)-(c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, Defendant's contacts with this District are sufficient to subject it to personal jurisdiction, and Defendant is headquartered in this District.

8. Venue is also proper in this District because Defendant has resided in this District at all times relevant to these claims and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

9. At all relevant times, Plaintiff Carrie Loughman resided in Homer, Ohio.

10. Defendant CEC is a Delaware corporation with headquarters at 231 N. Martingale Road, Schaumburg, IL, 60173. At all relevant times, CEC conducted business in the State of Illinois and within this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA[1] in an effort to regulate the growing telemarketing industry and to deter and curb the invasion of the public's privacy by placing restrictions on unsolicited marketing calls.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

12. <u>Automated Calls</u>. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."[2]

13. The TCPA accordingly regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

14. According to findings made by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

15. The FCC has defined prior express consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

16. Under the TCPA, the burden is on defendants to demonstrate prior express written consent.

17. The FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."[4]

---

[2] *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).
[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) ("2003 FCC Order).
[4] *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 at ¶ 13 (1995).

1870896.3

18. The TCPA defines an "automatic telephone dialing system" (an "ATDS") as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[5]

19. This statutory language indicates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)."[6]

20. This interpretation is supported by a series of longstanding FCC orders. The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[7] The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention." and that the statutory definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers."[8]

21. A 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[9] And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate

---

[5] 47 U.S.C. § 227(b)(1)(A)(iii).

[6] *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018) (emphasis supplied); *see also id.* at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.")

[7] 18 FCC Rcd at 14,143 n.31.

[8] *Id*. at 14,092.

[9] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008); *see also id.* (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[10]

22. <u>Internal Do Not Call Protections</u>. Regardless of whether an autodialer is used or there exists prior express consent, the TCPA requires marketers to maintain certain minimum procedures when placing telemarketing calls, procedures designed to ensure consumers have a meaningful opportunity to stop unwanted calls.

23. Specifically, The TCPA makes it unlawful to

> initiate any call for telemarketing purposes to a residential telephone subscriber *unless* such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that person or entity.[11]

24. If such mandatory minimum procedures are not instituted, then each telemarketing call constitutes a violation of the TCPA. Where a violation has occurred, any person receiving two or more calls has a private right of action.

25. For instance, CEC was required to institute the following minimum procedures and or take the following actions prior to placing (and during) any telemarketing call:

    a. Maintain a list of persons who request not to receive telemarketing calls made by or on behalf of CEC;

    b. Maintain a written policy for maintaining an internal do not call list;

    c. Train personnel engaged in any aspect of telemarketing regarding the existence of, and adherence to, an internal do not call list;

    d. Record requests not to be called by or on behalf of CEC;

    e. Honor requests not to be called by or on behalf of CEC; and

---

[10] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15,391, 15,399 (2012).

[11] *See* 47 C.F.R. §§ 64.1200(d) and (c)(2) (emphasis added); *see also* 47 U.S.C. § 227(c)(5).

1870896.3

    f. Provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.[12]

26. The failure to institute mandatory minimum standards for compliance with consumer requests not to be called constitutes a violation of the TCPA.

27. Prior express consent is not a defense to any failure to institute the mandatory minimum standards required by the Rules.

28. <u>Statutory Damages.</u> The TCPA, at 47 U.S.C. § 227(c)(5), provides a private right of action to consumers for violations of the 47 C.F.R. §§ 64.1200(d) and (c)(2), and for statutory damages of up to $500 per violation, and up to $1,500 for each willful or knowing violation.

<b>FACTUAL ALLEGATIONS</b>

29. CEC operates for-profit higher education institutions, including American Intercontinental University.

30. Plaintiff Carrie Loughman is a "person" as defined by 47 U.S.C. § 153(39).

31. In or around March 2019, Ms. Loughman researched programs to earn a degree in medical record information management. She contacted American Intercontinental University by telephone to get information regarding pricing. The CEC representative aggressively inquired into Ms. Loughman's eligibility for federal student loan aid. In response, Ms. Loughman concluded that American Intercontinental University was not for her and ended the call.

32. Ms. Loughman did not provide her express written consent to be called by CEC.

33. CEC thereafter bombarded Ms. Loughman with telemarketing calls, pressuring her to enroll, for at least the next several months. CEC called Ms. Loughman's wireless phone (number ending in -8301) virtually every day, up to two or three times a day.

34. The calls were made for the purpose of soliciting Ms. Loughman to pay to enroll in CEC's educational program and so constituted telemarketing calls.

---

[12] *See* 47 C.F.R. §§ 64.1200(d)(1)-(6).

1870896.3

35. The calls were annoying and harassing to Ms. Loughman, and an invasion of her privacy.

36. At all relevant times, Plaintiff paid for her cellular telephone services.

37. On many occasions, Ms. Loughman instructed CEC to cease calling her by telephone and email. CEC, however, continued to call her.

38. Ms. Loughman also placed a post on Google Review an attempt to make the calls stop. In or around March 2018, Plaintiff posted the following message:

> I have emailed your "college" and personally asked to be taken off of call list. You continue to call me and even email me stuff about " why havent I began doing my class yet?" I haven't signed ANY papers or done ANY financial aid. One more time, I cannot afford your college. Period. Financially NOT possible. Now, if your establishment could stop contacting me that would be great.

39. CEC, however, continued to call her.

40. CEC placed dozens of calls to Ms. Loughman.

41. After many months of calls, CEC finally stopped calling her.

42. At no time did Plaintiff provide prior express consent to CEC to make calls to her cellular telephone.

43. <u>ATDS Allegations</u>. Based on the frequency of the calls to Ms. Loughman's cellular telephone, the geographic location of the parties, and the generic nature of the solicitation, CEC used an ATDS during its telemarketing calls.

44. Dialers of the type commonly used by telemarketers like CEC have the capacity to store numbers to be called, the capacity to produce telephone numbers to be called, the capacity to generate telephone numbers to be called, and the capacity to dial telephone numbers automatically.

45. On information and belief, CEC's dialing systems are predictive dialers. Like all predictive dialers, CEC's dialers are a type of ATDS that used, stored, produced, generated, or

otherwise entered phone numbers from a .csv file, spreadsheet, and/or a database to automatically make outgoing telephone calls.

46. A predictive dialer is an ATDS within the meaning of the TCPA, because it is equipment that, when paired with certain computer software, has the capacity to store or produce telephone numbers to be called and without human intervention to dial such numbers at random, in sequential order, and/or from a database of numbers.

47. Such systems can create dialing campaigns that cause calls to be made automatically to telephone numbers based on certain criteria and without requiring the user to dial the phone numbers, and maintain an electronic record of each call made.

48. Such systems automatically connect available call center agents with successfully-completed outbound calls.

49. On information and belief, the dialing system used by CEC also has the capacity to produce numbers using a random or sequential number generator and dial them automatically.

50. On information and belief, the dialing system used is driven by software that utilizes an algorithm that determines when the system will make a phone call. The dialer makes this determination automatically and without human intervention. These characteristics too are indicative of an ATDS.

51. Such calls utilizing an ATDS enable CEC to place more telemarketing calls. On information and belief, CEC's predictive dialing system placed tens of thousands of calls to phone numbers.

52. On information and belief, after CEC's representatives conclude a phone call with a consumer, CEC's and dialing technology will automatically start calling another phone number from a population of phone numbers and without human intervention.

53. On information and belief, within the past four years, CEC has made tens of thousands of ATDS calls to the cellular telephones of consumers who had not previously given CEC prior express written consent to receive such calls.

1870896.3

54. <u>Internal Do-Not-Call Allegations</u>. CEC's failure to acknowledge or record Ms. Loughman's repeated requests not to be called evidences that CEC placed multiple calls to Ms. Loughman without instituting the mandatory minimum procedures required by 47 C.F.R. § 64.1200(d), including:

    a. A TCPA-compliant internal do not call list;

    b. A TCPA-compliant written policy for maintaining an internal do not call list;

    c. Training of employees with respect to the existence of, and adherence to, a TCPA-compliant internal do-not-call list.

    d. Recording of requests not to be called at any time relevant to this lawsuit.

    e. Adhering to requests not to be called, and scrubbing against a list of persons who requested not to be called prior to initiating contact with consumers.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action on behalf of herself and all other persons similarly situated.

56. Plaintiff proposes the following class definitions, subject to amendment as appropriate:

> IDNC Class: All persons within the United States who, on or after January 10, 2016 received more than one telephone calls from CEC for the purpose of selling or attempting to sell CEC's services.
>
> ATDS Class: All persons within the United States who, on or January 10, 2016, received a non-emergency telemarketing call from CEC to a cellular telephone through the use of an automatic telephone dialing system and who did not provide prior express written consent for such calls.

Plaintiff represents, and is a member of, both the IDNC Class and the ATDS Class. Excluded from the Classes are CEC and any entities in which CEC has a controlling interest, CEC's agents and employees, any Judge and Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families, and claims for personal injury, wrongful death and/or emotional distress.

57. Plaintiff does not know the exact number of members in the Classes, but based upon the scope of CEC's operations, Plaintiff reasonably believes that Class and Subclass members number at minimum in the tens of thousands. The joinder of all Class members is impracticable due to the size of each class and the relatively modest value of each individual claim.

58. The identity of Class members can be readily ascertained from the records of CEC.

59. Plaintiff and all members of the Classes have been harmed by the acts of CEC. This includes the aggravation and nuisance and invasions of privacy that resulted from the receipt of telemarketing phone calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such phone calls. Furthermore, the phone calls interfered with Plaintiff's and other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. CEC also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data or minutes with respect to Class members charged additional money for the cell phone minutes taken up by CEC's illegal calls.

60. CEC's failure to maintain the minimum do-not-call procedures also deprived IDNC Class members of the opportunity to prevent the unrestricted telemarketing to their cellular telephones, the precise harm identified by Congress in the TCPA.

61. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

62. There are well-defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    a. Whether CEC instituted mandatory minimum procedures prior to placing telemarketing calls;

1870896.3

    b.  Whether CEC maintained TCPA-compliant a list of persons who requested not to receive telemarketing calls by CEC;

    c.  Whether CEC maintained a TCPA-compliant written policy for maintaining an internal do not call list;

    d.  Whether CEC trained its employees regarding the existence and use of a TCPA-compliant internal do not call list;

    e.  Whether CEC made calls for the purpose of selling or encouraging the sale of CEC services;

    f.  Whether the members of the IDNC Class received more than one call during any twelve-month period;

    g.  Whether such calls were made by or on behalf of CEC;

    h.  Whether the non-emergency calls made to Plaintiff's ATDS Class members' cellular telephones used an ATDS;

    i.  Whether CEC can meet its burden of showing it obtained prior express written consent to make such calls to Plaintiff and ATDS Class members;

    j.  Whether CEC's conduct was knowing and/or willful;

    k.  Whether CEC is liable for damages, and the amount of such damages; and

    l.  Whether CEC should be enjoined from engaging in such conduct in the future.

  63.  As a person who received numerous and repeated telemarketing calls from CEC, Plaintiff asserts claims that are typical of each Class member. Plaintiff will fairly and adequately represent and protect the interests of both Classes, and has no interests which are antagonistic to any member of the Classes.

  64.  Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including class action claims under the TCPA.

65. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel CEC to comply with the TCPA s. The interest of Class members in individually controlling the prosecution of separate claims against CEC is small because the statutory damages in an individual action for violation of the TCPA are relatively small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the elements of the claims are straightforward and focus on CEC's conduct.

66. CEC has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as wholes appropriate. Moreover, on information and belief, Plaintiff alleges that the violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*; 47 C.F.R. § 64.1200**

67. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

68. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA and Rules, including but not limited to each of the above-cited provisions 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200.

69. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. §64.1200, Plaintiff and members of the Classes are entitled to treble damages of up to $1,500.00 for each and every violation of the statute and Rules, pursuant to 47 U.S.C. § 227(c)(5)(B).

70. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by CEC in the future.

1870896.3

71. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

**STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227 *ET SEQ*.; 47 C.F.R. § 64.1200**

72. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

73. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA and Rules, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*. and 47 C.F.R. § 64.1200.

74. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. §64.1200 Plaintiff and Class members are entitled to an award of up to $500.00 in statutory damages for each and every violation of the statute and Rules, pursuant to 47 U.S.C. § 227(c)(5)(B).

75. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA and Rules in the future.

76. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(c) and 47 C.F.R. §64.1200, Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every violation of the TCPA;

C. As a result of Defendant's violations of 47 U.S.C. § 227(c) and 47 C.F.R.

§64.1200, Plaintiff seeks for herself and each Class member up to $500.00 in statutory damages for each and every violation of the TCPA;

  D. An award of reasonable attorneys' fees and costs to counsel for Plaintiff and the Class;

  E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Classes, as the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

  F. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: January 10, 2020    Respectfully submitted,

        By: /s/ *Alan W. Nicgorski*
          Alan W. Nicgorski

        HANSEN REYNOLDS LLC
        Alan W. Nicgorski
        (admitted to the N.D. Ill. general and trial bars)
        anicgorski@hansenreynolds.com
        150 S. Wacker Dr., 24th Floor
        Chicago, IL 60606
        (312) 265-2252

        Michael C. Lueder
        (admitted to the N.D. Ill. general bar)
        mlueder@hansenreynolds.com
        301 N. Broadway, Suite 400
        Milwaukee, WI 53202
        (414) 273-8474

LIEFF CABRASER, HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson
(admitted to the N.D. Ill. general bar)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000

Andrew R. Kaufman
(admitted to the N.D. Ill. general bar)
akaufman@lchb.com
222 Second Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000

PARONICH LAW, P.C.
Anthony Paronich
(admitted to the N.D. Ill. general bar)
anthony@paronichlaw.com
350 Lincoln Street, Suite 2400
Hingham, MA 02043
 (617) 485-0018

TURKE & STRAUSS LLP
Samuel J. Strauss
(admitted to the N.D. Ill. general bar)
sam@turkestrauss.com
613 Williamson Street, Suite 201
Madison, WI 53703
(608) 237-1775

*Attorneys for Plaintiff and the Proposed Classes*